Sarah I. Cohen, Esq. (SIC1656)
scohen@ipcounselors.com
California Bar No. 257161
Jason M. Drangel (JMD 7204) (*pro hac vice pending*)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715) (*pro hac vice pending*)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391

Attorneys for Plaintiff ROVIO
ENTERTAINMENT LTD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROVIO ENTERTAINMENT, LTD.<br>*Plaintiff*<br><br>v.<br><br>RONNIE HOME TEXTILE, INC.;<br>KENNETH JAMES DOEING; QINQIN PAN<br>a/k/a PANQING QING a/k/a TIFFANY QING<br>a/k/a TIFFANY PAN a/k/a MARIA PAN; and<br>DOES 1 – 10, inclusive<br>*Defendants* | 14: CIV__ _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff, Rovio Entertainment Ltd ("Rovio" or "Plaintiff"), a limited liability company organized in Finland, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This action arises under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq.; for counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c); for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; for false designation of origin

and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); and for related common law claims. Plaintiff seeks injunctive relief, an accounting, compensatory damages, trebling of the accounting and/or compensatory damages, punitive damages, attorney's fees and costs.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), in that the case arises out of claims for copyright infringement under 17 U.S.C. § 501(a); and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a) and 1338 (a) - (b).

3.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because Defendants are located in this judicial district and, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damages to Plaintiff in this district.

4.     Personal jurisdiction exists over Defendants because, upon information and belief, Defendants are located and conduct business in California and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## INTRADISTRICT ASSIGNMENT

5.     To the extent this Action may be deemed to have arisen in a particular county within this District, that county is Los Angeles County on the grounds that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Los Angeles County where Defendants are all located.

**THE PARTIES**

6.     Plaintiff Rovio Entertainment Ltd. is a private limited liability company organized under Finnish law, having a principal place of business at Keilaranta 17 C, FI-02150 Espoo, Finland.

7.     Upon information and belief, Defendant Ronnie Home Textile, Inc. ("Ronnie Home" or "Corporate Defendant") is a California corporation, having a place of business at one or more of the following addresses: 111 E. 32nd Street, Los Angeles, CA 90011 ("32nd Street Location"), 506 E. 9th Street, Los Angeles, CA 90011 ("9th Street Location"), 1650 Nadeau St., Los Angeles, CA ("Nadeau Street Location"), 1191 Monterey Pass Rd., Monterey Park, CA 91754 ("Monterey Pass Location") (collectively, "Ronnie Home Locations").

8.     Upon information and belief, Defendant Kenneth James Doeing ("Doeing") is now, and was at the time of the filing of this Complaint and at all intervening times, an individual conducting business at one or more of the Ronnie Home Locations and believed to be currently residing at one or more of the following addresses: 152 Shrode Avenue, Monrovia, CA 91016 and 6268 N. San Gabriel Blvd., Apt 23, San Gabriel, CA 91775.

9.     Upon information and belief, Defendant Qinqin Pan a/k/a Panqing Qing a/k/a Tiffany Qing a/k/a Tiffany Pan a/k/a Maria Pan ("Pan") is now, and was at the time of the filing of this Complaint and at all intervening times, an individual conducting business at one or more of the Ronnie Home Locations and believed to be currently residing at one or more of the following addresses: 152 Shrode Avenue, Monrovia, CA 91016 and 6268 N. San Gabriel Blvd., Apt 23, San Gabriel, CA 91775.

10.     Doeing and Pan are hereinafter collectively referred to as "Individual Defendants". Upon information and belief, Doeing and Pan are husband and wife.

11.     Upon information and belief, Individual Defendants and Corporate Defendant have, at all relevant times herein, committed the unlawful acts set forth below, including knowingly and willfully copying, manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, and/or selling counterfeit and/or infringing Angry Birds products, or otherwise violating Plaintiff's intellectual property rights in this judicial district.

12.  Upon information and belief, Does 1-10 (hereinafter, "Doe Defendants") are either corporations, limited liability companies, other entities or individuals who are residents of or present in this judicial district and are subject to the jurisdiction of this Court. Upon information and belief, Doe Defendants are officers, directors, principals, shareholders and/or owners of Corporate Defendant, suppliers of Individual Defendants and/or Corporate Defendant, or other entities or individuals copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit and/or infringing Angry Birds products, or otherwise violating Plaintiff's intellectual property rights in this judicial district. The identities of the various Doe Defendants are unknown to Plaintiff at this time. The Complaint will be amended to include the names of such entities and/or individuals when identified. Corporate Defendant, Individual Defendants, and Doe Defendants are collectively hereinafter referred to as "Defendants".

13.  Upon information and belief, since its creation, now and at all times relevant to this Complaint, Corporate Defendant was under the de facto and sole control and served as the alter ego of Individual Defendants, who are the owners, presidents, directors and/or other officers or board members, of the Corporate Defendant. Upon information and belief, Individual Defendants are also a moving and conscious force behind the infringement that is the subject of this suit.

14.  Upon information and belief, at all times relevant hereto, Individual Defendants, inclusive, and each of them, were officers, directors, principals, shareholders and/or owners of Corporate Defendant as described above and the acts of Individual Defendants, as alleged herein, were performed within the course and scope of such positions. Defendants enriched themselves by fraudulent and illegal conduct as alleged herein, while Plaintiff suffered enormous financial injury.

15.  Adherence to the fiction of the separate existence of Corporate Defendant as an entity

distinct from Individual Defendants would permit an abuse of corporate privilege and would permit an injustice in that Individual Defendants would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

16.     Upon information and belief, since the time of its creation, now and all times relevant to this Complaint, there was such a unity of interest and ownership between Corporate Defendant and Individual Defendants that separate personalities of the corporation and the shareholders did not and do not in reality exist.

## COMMON FACTUAL ALLEGATIONS
### Plaintiff Rovio and its Well-Known Angry Birds Game and Licensed Products

17.     Rovio is an entertainment media company established in 2003 and is the creator of the globally successful Angry Birds franchise.  "Angry Birds" is a puzzle video game first released in December 2009 for Apple iOS which became an international phenomenon within a few months of its release.

18.     In the games, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield.  As players advance through the game, new birds appear, some with special abilities that can be activated by the player.  Since its release, Rovio has supported the Angry Birds games with numerous free updates that add additional game content as well as releasing multiple new versions of the game for multiple platforms.

19.     To date, the Angry Birds games have been downloaded over 250 billion times (250,000,000,000) across all platforms, including both regular and special editions (i.e., Classic, Seasons, Rio, Space, Star Wars, etc.), and over 1 billion (1,000,000,000) in 2012 alone.  Angry Birds is now the number one paid app of all time.

20.     There are approximately 40 million (40,000,000) active monthly users across all

1  platforms.  Players log more than 1 million (1,000,000) hours of game time each day on the iOS

2  version of the Angry Birds game and 3.33 million (3,330,000) hours per day across all platforms.

3      21.    In addition, Rovio has won multiple awards for various versions of the Angry Birds

4
   games.  In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th
5
6  annual International Mobile Gaming Awards in Barcelona, Spain.  In June of 2010, Macworld

7  named Angry Birds as the winner of the 2010 Macworld Award for "Best iPhone Entertainment &

8  Lifestyle App".  In July 2012, Angry Birds won "Best New Download IP" award at the Develop

9  Awards in Brighton.  In September 2010, IGN named Angry Birds as the fourth best iPhone game of

10 all time.  In April 2011, Angry Birds won both the "Best Game App" and "App of the Year" at the

11
   UK Appy Awards.  At the 15th edition of the Webby Awards, Angry Birds was awarded "Best
12
13 Game for Handheld Devices".  In April 2012, Angry Birds again won the "Best Game App" award

14 at the Appy Awards.

15     22.    Rovio and its Angry Birds franchise have received widespread press and media

16 coverage.  News stories, reports, reviews, features, press releases and blog posts have appeared in

17 worldwide print and online publications such as: USA Today, TIME, The New York Times, The

18 Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated Press,

19
   Reuters, and the Huffington Post, among many others.
20
21     23.    The popularity of the Angry Birds games led to an expansion of Angry Birds

22 franchise to other business areas including, but not limited to: the development and sale of

23 merchandise featuring its characters; the launch of the ToonsTV channel, Rovio's video

24 entertainment platform for the mobile generation airing the Angry Birds Toons television series,

25 which surpassed more than 1 billion (1,000,000,000) views in its first seven months since its release

26 in March of 2013; and plans for a feature film which is due to be released in July of 2016.

27
       24.    Rovio has created several key strategic partnerships with over five hundred (500)
28
   licensees ("Authorized Licensees") worldwide to develop an extensive and successful global

licensing program for merchandise, including more than forty thousand (40,000) products featuring its characters and using and/or sold in connection with Rovio's federally registered trademarks and copyrights, which include innovative product lines across multiple consumer products categories ("Authentic Products").

25.     In February of 2011, Rovio won "Property of the Year" for Angry Birds and "Game of the Year" for Authorized Licensee, Mattel's board game, "Angry Birds: Knock on Wood" at Toy of the Year Awards.   In June of 2012, the International Licensing Industry Merchandisers' Association (LIMA) selected Angry Birds as the "Overall Best Licensed Program of the Year" and the "Best Character/Toy Brand Program of the Year" award in the Character/Toy Brand segment. One of Rovio's Authorized Licensees, Commonwealth Toy & Novelty Co., was also awarded "Best Character/Toy Brand Licensee of the Year-Hard Goods" for its Angry Birds toys.

26.     While Plaintiff has gained significant common law trademark and other rights in its trademarks and Authentic Products through its extensive use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark registrations.

27.     Plaintiff is the owner of federally registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for 🐷 for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark No. 4,493,055 for 🐷 for a wide variety of goods in Classes 3, 5, 7, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, 43, and 45, and U.S. Trademark No. 4,493,031 for 🐦, U.S. Trademark No. 4,489,982 for 🐦, U.S. Trademark No, 4,489,981 for 🐦, U.S. Trademark No. 4,489,980 for 🐦, U.S. Trademark No. 4,489,979 for 🐦, U.S. Trademark No. 4,486,763 for 🐦, and U.S. Trademark No. 4,486,762 for 🐦, for a wide

variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, and 43 (collectively, "Marks").  A true and correct copy of the registrations for the Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

28.     The Marks are currently in use in commerce for the Authentic Products, which include textiles (the products at issue in this action), and the constructive date of first use based on Rovio's federal trademark registrations for its Marks is no later than March 31, 2011.

29.     Plaintiff also owns both registered and unregistered copyrights in and related to the games, game characters and Authentic Products, which protect the various proprietary characters originated in the game and extended through its line of Authentic Products. The line is updated from time to time to add new designs and products.

30.     Plaintiff has protected its valuable rights by filing and obtaining United States copyright registrations in and relating to many of its characters and Authentic Products.  For example, Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights (hereinafter collectively referred to as the "Copyright Works").   True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

31.     Rovio has gone to great lengths to protect its interests in and to its Marks and Copyright Works.  No one other than Rovio and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Marks or Copyright Works without the express written permission of Rovio.

32.     As a result of Plaintiff's efforts, the quality of its Authentic Products, its promotions, extensive press and media coverage and word of mouth buzz, Plaintiff's Marks, Copyright Works and Authentic Products have become prominently placed in the minds of the public. Members of the public have become familiar with Plaintiff's Marks, Copyright Works and Authentic Products, and

have come to recognize the Marks, Copyright Works and Authentic Products and associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, the Marks, Copyright Works and Authentic Products are famous in the United States, among other countries.

**i.    Defendants' Wrongful and Infringing Conduct**

33.    Particularly in light of the success of Plaintiff, Plaintiff's Angry Birds games and Authentic Products, as well as the reputation they have gained, Plaintiff and Plaintiff's Angry Birds games and Authentic Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Marks, Copyright Works and Authentic Products.

34.    Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions which vary and include: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling textiles bearing one or more of Plaintiff's Marks and/or Copyright Works, and/or bearing marks and/or artwork that is confusingly or substantially similar to Plaintiff's Marks and/or Copyright Works, and/or textiles that are identical or confusingly or substantially similar to Plaintiff's Authentic Products (collectively hereinafter referred to as, "Infringing Products" or "Counterfeit Products").

35.    On or about October 18, 2013 Plaintiff received information from investigators hired by Plaintiff's counsel ("Plaintiff's Investigators") about an ongoing investigation into Ronnie Home for importing, distributing and selling counterfeit textile products, infringing the rights of multiple rights holders.

36.    Plaintiff's Investigators visited the Ronnie Home Locations multiple times from July through November of 2013, where they observed large quantities of Infringing Products.

37.    One or more Defendants sold Infringing Products to Plaintiff's Investigators at the

Ronnie Home Locations.  True and correct copies of photographs of a sample of the Infringing Products purchased by such investigators are attached hereto as **Exhibit C** and incorporated herein by reference.

38.   The Infringing Products purchased from Defendants by Plaintiff's Investigators are counterfeit and infringe Plaintiff's Marks and/or Copyright Works.

39.   The Los Angeles Police Department's CTIP Police Task Force ("CTIP") served a search warrant on Defendants at the Monterey Pass Location and seized Infringing Products from one or more of the Defendants on December 16, 2013 with the assistance of Plaintiff's Investigators. CTIP seized 901 rolls of Infringing Products.  True and correct copies of photographs of the Infringing Products seized by CTIP are attached hereto as **Exhibit D** and incorporated herein by reference.

40.   The Infringing Products seized by CTIP are counterfeit and infringe Plaintiff's Marks and/or Copyright Works.

41.   The Infringing Products purchased by Plaintiff's Investigators and seized by CTIP are all Infringing Products bearing Rovio's Marks and/or Copyright Works and/or marks or artwork which are identical or confusingly or substantially similar to Plaintiff's Marks and/or Copyright Works.  The constructive date of first use based on Rovio's federal trademark registrations for its Marks is no later than March 31, 2011, well prior to Defendants' dealings in Infringing Products (including: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling).

42.   Defendants are not, and never have been, Authorized Licensees or authorized retailers of Authentic Products.  Neither Plaintiff nor any authorized agents of Plaintiff have consented to Defendants' use of Plaintiff's Marks and/or Copyright Works, nor have they consented to Defendants' use of any identical or confusingly similar marks by Defendants.  Plaintiff has never authorized Defendants to copy, use, manufacture, import, export, advertise, market, promote,

distribute, display, offer for sale or sell any of its Copyright Works or products bearing its Marks and/or Copyright Works.

43.    By the aforementioned sales of Infringing Products, and upon information and belief, through Defendants' dealings in Infringing Products (including: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling), Defendants have violated Plaintiff's exclusive rights in and to its Marks and Copyright Works, and have used images and designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and/or Copyright Works, to confuse consumers and aid in the promotion and sales of their Infringing Products. Defendants' conduct and use began long after Plaintiff's adoption and use of its Marks and Copyright Works.

44.    Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Marks and Copyright Works, and of the extraordinary fame and strength of Rovio's Marks and Copyright Works, and the incalculable goodwill associated therewith, and in bad faith adopted Plaintiff's Marks and/or Copyright Works.

45.    Defendants have been engaging in the illegal counterfeiting and infringing actions as alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Rovio's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Rovio's Marks, Copyright Works and Authentic Products.

46.    Defendants' illegal counterfeiting and infringing actions as alleged herein will cause confusion, mistake, and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

47.    In committing these acts, Defendants have, among other things, willfully and in bad

faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed Plaintiff's Copyright Works; counterfeited Plaintiff's Marks and Authentic Products; infringed Plaintiff's Marks; committed unfair competition; and unfairly profited from such activity at Plaintiff's expense. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

48.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

49.    Plaintiff is the exclusive owner of the Copyright Works.

50.    Defendants have actual notice of Plaintiff's exclusive rights in and to the Copyright Works.

51.    Defendants did not attempt and failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's Authentic Products and/or Copyright Works.

52.    Without permission, Defendants knowingly and intentionally reproduced, copied, and/or displayed Plaintiff's Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale or selling Infringing Products which bear such Copyright Works or, artwork that is, at a minimum, substantially similar to Plaintiff's Copyright Works.

53.    Defendants' acts, as alleged herein, constitute infringement of Plaintiff's Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Copyright Works.

54.    Defendants' knowing and intentional copyright infringement as alleged herein has

caused, and will continue to cause, substantial and irreparable harm to Plaintiff, and has, and will continue to cause, damage to Plaintiff. Plaintiff is therefore entitled to injunctive relief, damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

### SECOND CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c))**

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in its Marks, and with knowledge that their Infringing Products bear marks which are intentionally identical to, or imitations of, Plaintiff's Marks, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce.

57.     Defendants' Counterfeit Products reproduce, counterfeit, copy, and colorably imitate Plaintiff's Marks or display spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's Marks.

58.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels, point-of-purchase images, and advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, cause mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing that the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by Rovio.

59.     Defendants' unauthorized use of Plaintiff's Marks on or in connection with the

Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff. Defendants' actions constitute willful counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

60.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to its valuable Marks and other damages in an amount to be proved at trial.

61.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Counterfeit Products unless this Court enjoins Defendants from such activities.

### THIRD CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

62.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     Plaintiff has continuously used its Marks in interstate commerce since at least as early as the Summer of 2010.

64.     Plaintiff, as the owner of all right, title and interest in and to its Marks, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

65.     Defendants are now, and were, at the time of their actions complained of herein, actually aware that Plaintiff is the registered trademark owner of the Marks.

66.     Defendants did not attempt and failed to obtain the consent or authorization of Plaintiff, as the registered trademark owner of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and/or related products bearing Plaintiff's Marks into the stream of commerce.

67.     Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiff's Marks and applied such reproductions, copies, or colorable imitations to labels, signs,

prints, packages, wrappers, receptacles and/or advertisements used in commerce, and/or intended to be used in commerce or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendants' Infringing Products. Defendants manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing, or in connection with, such labels, signs, prints, packages, wrappers, receptacles and/or advertisements.

68.     Defendants' egregious and intentional use of Plaintiff's Marks in commerce and Defendants' sale of items bearing Plaintiff's Marks or colorable imitations Plaintiff's Marks has caused actual confusion and is likely to continue to cause further confusion, to cause mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Authentic Products, or are otherwise associated with, or authorized by Rovio.

69.     Defendants' acts have been committed in bad faith and with knowledge of Plaintiff's exclusive rights and goodwill in the Marks, and with the intent of causing confusion, mistake and deception.

70.     Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to its Marks and the goodwill associated therewith, for which it has no adequate remedy at law; thus Plaintiff requests injunctive relief.

71.     Defendants' continued, knowing and intentional use of Plaintiff's Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114. Based on such conduct, Rovio is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

72.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

73.     Plaintiff has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

74.     Defendants have, without authorization, on or in connection with their Infringing Products, made false designations of origin which are likely to cause confusion, cause mistake and to deceive as to the affiliation, connection or association of Defendants' Infringing Products with Plaintiff, and/or as to the origin, sponsorship or approval of Defendants' Infringing Products and commercial activities by Plaintiff.

75.     Defendants' knowingly and willfully used in commerce product designs that are confusingly similar to and constitute a reproduction of Plaintiff's Copyrighted Works and used Plaintiff's Marks on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public and in blatant disregard of Plaintiff's rights.

76.     Defendants' unlawful, unauthorized, and unlicensed manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Infringing Products violates the Lanham Act, and creates express and implied misrepresentations that Defendants' Infringing Products were created, authorized, sanctioned, or approved by Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants' to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Marks and brands, to Defendants' substantial profit.

77.     Defendants' have created a false designation of origin (passing off), and are unfairly

competing with Plaintiff, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and are causing substantial and irreparable injury to Plaintiff's goodwill and reputation, for which it has no adequate remedy at law, and if not enjoined, will continue to cause substantial and irreparable injury to Plaintiff and to the purchasing public.

78.     Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive and in blatant disregard of Plaintiff's rights.

79.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of use in commerce and continuing use of images and designs that are confusingly and substantially similar or identical to and constitute a reproduction of Plaintiff's Copyright Works would cause confusion, cause mistake, and deceive purchasers, users and the public.

80.     Defendants' egregious and intentional use and sale of items that are confusingly similar or identical to or colorable imitations of Plaintiff's Marks unfairly competes with Plaintiff and is likely to cause confusion, mistake, and deceive, mislead, betray, and defraud consumers into believing that the substandard imitations are Authentic Products or related products.

81.     As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff has been and will be deprived of sales of its Authentic Products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its Marks as commercial assets in an amount as yet unknown but to be determined at trial.  Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff three times that amount in the Court's discretion.

82.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**
**[California Common Law]**

83.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84.     By marketing, advertising, promoting, selling and/or otherwise dealing in the Infringing Products, Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of the common law of the State of California.

85.     Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in Infringing Products is in violation and derogation of Plaintiff's rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products, thereby causing loss, damage and injury to Plaintiff and to the purchasing public.  Defendants' conduct was intended to cause such loss, damage and injury.

86.     Defendants knew, or by the exercise of reasonable care should have known, that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

87.     By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in Infringing Products, Defendants intended to induce, did induce, and intends to continue and will continue to induce customers to purchase its Infringing Products by trading off the extensive goodwill built up by Plaintiff.

88.     Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, intended to cause confusion, cause mistake and to deceive and in blatant disregard of Plaintiff's rights.

89.     Defendants' wrongful conduct, as alleged above, has permitted and will permit them to continue to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition.   As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will continue to be deprived of substantial sales of its Authentic Products in an amount as yet unknown but to be determined at trial, and has been and will continue to be deprived of the value of its Marks as commercial assets, in an amount as yet unknown but to be determined at trial.  Plaintiff seeks an order granting Defendants' profits stemming from its infringing activity, and its actual and/or compensatory damages.

90.     Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above.  Plaintiff seeks preliminary and permanent injunctive relief.

91.     Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)
### [California Common Law]

92.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93.     By virtue of the egregious and illegal acts of Defendants as described above, Defendant has been unjustly enriched in an amount to proven at trial.

94.     Defendants' retention of monies gained through its deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Defendants' profits and order that Plaintiff recover Defendants' illicit profits

and damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

B.      For an award of statutory damages of $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(d).

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114;

D.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. § 501(a);

E.      In the alternative to actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), for statutory damages pursuant to 17 USC § 504(c), which election Plaintiff will make prior to the rendering of final judgment;

F.       For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. § 1125(a);

G.      For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices.

H.      For damages to be proven at trial for common law unfair competition;

I.       For preliminary and permanent injunctions by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices described herein, including (1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or dealing in any Infringing Products or any products which are confusingly or substantially similar to the Authentic Products or may otherwise violate Plaintiff's Marks and/or Copyright Works, or proprietary rights in the Authentic Products; (2) the unauthorized use of any Marks, Copyright Works and/or other

1  intellectual property right of Plaintiff; (3) acts of trademark and/or copyright infringement; (4) acts

2  of unfair competition; and (5) any other acts in derogation of Plaintiff's rights.

3  J.    For an order from the Court requiring that Defendants provide complete accountings, and for

4  equitable relief, including that Defendants (1) disgorge and return or otherwise pay to Plaintiff their

5  ill-gotten gains obtained from the illegal acts and transactions alleged herein; and/or (2) pay

6  restitution to Plaintiff, including the amount of monies that should have been paid if Defendants'

7  complied with their legal obligations, or as equity otherwise requires.

8  K.    For an order from the Court that an asset freeze or constructive trust be imposed over all

9  monies and profits in Defendants' possession which rightfully belong to Plaintiff.

10 L.    For destruction of the infringing articles in Defendants' possession under 17 USC § 503;

11 M.    For damages in an amount to be proven at trial for unjust enrichment.

12 N.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

13 O.    For Plaintiff's reasonable attorney's fees;

14 P.    For all costs of suit;

15 Q.    For such other and further relief as the Court may deem just and equitable.

16 **DEMAND FOR JURY TRIAL**

17 Plaintiff respectfully demands a trial by jury in this action.

18 Dated: August 14, 2014          Respectfully submitted,

19 EPSTEIN DRANGEL LLP

20 BY: _____
   Sarah I. Cohen, Esq. (SIC1656)
   scohen@ipcounselors.com
   California Bar No. 257161
   Jason M. Drangel (JMD 7204) (*pro hac vice pending*)
   jdrangel@ipcounselors.com
   Ashly E. Sands  (AES 7715) (*pro hac vice pending*)
   asands@ipcounselors.com
   60 East 42nd Street, Suite 2410
   New York, NY 10165

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*ROVIO ENTERTAINMENT LTD*